IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| THE UNITED STEEL, PAPER and ) <br> FORESTRY, RUBBER, ) <br> MANUFACTURING, ENERGY, ) <br> ALLIED INDUSTRIAL AND ) <br> SERVICE WORKERS INTERNATIONAL ) <br> UNION, AFL-CIO, CLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MEADWESTVACO CORPORATION, ) <br> MEADWESTVACO PACKAGING ) <br> RESOURCES GROUP, MAHRT MILL, ) <br> ) <br> Defendants. ) | CIVIL ACT. NO. 3:12cv104-CSC <br> (WO) |

**MEMORANDUM OPINION and ORDER**

On February 3, 2012, plaintiff The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allie Industrial and Service Workers International Union, AFL-CIO, CLC (hereinafter "the Union") filed this action against defendant Meadwestvaco Corporation, Meadwestvaco Packaging Resources Group, Mahrt Mill (hereinafter "the Company") to seek enforcement of Arbitrator Crissy Griffen Vining's August 8, 2011 award.[1] The court has jurisdiction of this matter pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  *See also United Steel, Paper and Forestry, Rubber Mfg.,*

---

[1] Initially, the Union sought enforcement of two arbitration awards.  However, on December 5, 2012, the parties notified the court that they had resolved the claims related to Arbitrator Jennings' Award.  (Doc. # 23).  The court dismissed those claims on December 7, 2012.  (Doc. # 24).

*Energy, Allied Indus. and Service Workers Intern. Union AFL-CIO-CLC v. Smurfit-Stone Container Corp*. 479 Fed. Appx. 250, 252, 2012 WL 2376676, 1 (11th Cir. 2012) ("The lawsuit was filed pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which provides district courts with, among other things, subject-matter jurisdiction to entertain an action by an employee or union against an employer to enforce an arbitration award which is final and binding pursuant to the terms of the CBA.")(citing *Gen. Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963); *Diaz v. Schwerman Trucking Co.,* 709 F.2d 1371, 1374 (11th Cir.1983); *Truck Drivers & Helpers Local Union No. 728 v. Georgia Highway Express, Inc.,* 328 F.2d 93, 95–96 (5th Cir.1964)).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

Now pending before the court are the parties' motions for summary judgment (docs. # 15 & 18).  The parties have responded to the motions, and the court heard oral argument on the motions on February 21, 2013.  After careful consideration of the motions, the parties' responses, the supporting and opposing evidentiary materials, and oral argument, the court concludes that it must remand this matter to the arbitrator to clarify her award.

## FACTS

The facts are largely undisputed.  On June 1, 2009, the Company implemented a new parts delivery system that transferred work from maintenance employees to storeroom

employees. The Union objected and filed a grievance. (Doc. # 17, Ex. 3 at 2). According to the Union, "[i]t has been the practice of the Maintenance Department Mechanics to procure parts needed for a job or repairs for over forty years," and the Company's new requirement that storeroom employees deliver parts violated Article 21 of the Collective Bargaining Agreement ("CBA"). (*Id*.) The Union requested that "the practices that violate the contract, that are inconsistent with established policy and are not in the best interest of the maintenance mechanics stop. We additionally ask that management abide by the contract and follow its own procedures." (*Id*.) The grievance was denied by the Company, and the parties proceeded to arbitration as set forth in the CBA.

After an arbitration hearing, the arbitrator concluded that the change in policy violated the CBA. She found that

> with regards to Article 21, Assignment of Work that the June 1, 2009 implementation of the parts delivery system was not in accordance with the contract language, specifically "The Company will not assign an employee in one department to perform work that is normally responsibility (sic) of an employee in another department."

(Doc. # 17, Ex. 8 at 10)

She further explained that the

> Arbitrator acknowledges that the issue was previously before an Arbitrator. Upon encouragement absent a ruling the issue was remedied by the parties with Satellite Stores Stocking Procedure (Union Exhibit No. 6). Unfortunately, none of the evidence or testimony concluded that the parties incorporated the Satellite Stores Stocking Procedure (Union Exhibit No. 6) into the current Collective Bargaining Agreement although testimony concluded that its implementation was *still being practiced up until June 1, 2009*. On November 10, 2008 the practice of parts acquisition was the duty of

>   the Maintenance Man/Maintenance Department (a practice in accordance with the Satellite Stores Stocking Procedure (Union Exhibit No. 6)). The implementation of the June 1, 2009, new parts delivery system called for a substantial change in the current practice. In accordance with Article 26 exert *any deviation from practices not in affect and in operation on November 10, 2008, regardless "of previous agreements, understandings, practices, or customs written or oral" would be required to be condensed to "writing and signed by the representatives of the Local Unions, International Unions, Human Resources Manager, Mill Manager, and Vice President of Human Resources*. Any other written agreements and understandings will be filed with Human Resources with all parties receiving a copies (sic)".
>
>   In conclusion, it is the *belief of the Arbitrator*, considering the given testimony by all parties coupled with the intent to achieve efficiency and effectiveness of the new parts delivery system than an agreement, understanding, practice and/or custom *will be achievable in the immediate future, condensed to writing and signed by all required parties in accordance* Article 26 of the Collective Bargaining Agreement.

(*Id*. at 11) (emphasis added).

She ended her Award by upholding the grievances. "Grievances 2009-078 and 2009-091 are upheld." (*Id*. at 12).

On August 19, 2011, the Company requested clarification from the Arbitrator regarding her opinion and Award. (Doc. # 17, Ex 13). However, because the Union did not agree, the Arbitrator was prohibited by the Code of Professional Responsibility for Arbitrators from clarifying her Award.[2] (Doc. # 17, Ex. 15).

On August 26, 2011, the Company instituted the following policy in response to the Arbitrator's Award.

---

[2] In its' brief in support of its' motion for summary judgment, the Union suggests that "should the Court find that Arbitrator Vining's Award is ambiguous, we ask that this case be remanded to the arbitrator for clarification." (Doc. # 19 at 13).

4

> The company will establish maintenance Area "**D**elivery." It will assign one person to the area to deliver parts that have been reserved, kitted, pulled and setup to deliver. The area will be responsible for emergency deliveries and delivering direct charge items.
>
> Mechanics from all areas will continue to pick up items from the storeroom counter as directed by the supervisor. On days when the Area "**D**elivery" employee is out or unavailable, the company maintains the right to leave this position vacate and have mechanics from all areas pick up items from the storeroom.

(Doc. # 17, Declaration of Gus Lind, Ex.1)

The Company implemented the policy on August 29, 2011. (*Id*.) The Union objected that the new policy was not in compliance with the Arbitrator's Award. It filed suit on February 3, 2012 to enforce the Award.

## PARTIES' POSITIONS

The Union argues that the Company failed to comply with the Arbitration Award because it did not return to the prior method of parts delivery, and it has not bargained with the Union to reach an agreement on the new parts delivery system implemented in August 2011.[3] According to the Union, the Arbitrator's Award requires the Company to return to the "status quo ante."

> [T]he plain language of the Award requires the Company to eliminate the offending practice **and return** to the original parts delivery method **until** such time as a new practice can be agreed upon by the parties, reduced to writing, and signed by both the Company and the Union.

---

[3] The Union is challenging the August 2011 parts delivery policy in another grievance presently headed to arbitration.

(Doc. # 19 at 9) (emphasis added).

The Company, on the other hand, contends that "it complied with Arbitrator Vining's Award" when it rescinded the June 1, 2009 parts delivery policy. According to the Company, it achieved compliance when it revised the parts delivery policy so that "a maintenance employee performed the delivery work, and thus, [the Company] would no longer have an employee in one department performing work that had previously been assigned to another department." (Doc. # 16 at 10, ¶ 20). According to the Company, because "the new parts delivery process leaves the parts delivery function within the maintenance department, there is no requirement that the new process be agreed upon by all parties and condensed to writing." (*Id*. at 14). Referring to the Arbitrator's language as "aspirational," the Company argues that the Award does not require the parties to reach a written agreement on a parts delivery policy.

> Arbitrator Vining determined that the new parts delivery system violated Article 21 of the CBA because it shifted work that was performed by one department to another department. In accordance with Arbitrator Vining's Award, [the Company] stopped that process.
> [The Company] revised the delivery process to ensure that the delivery of parts remains in the Maintenance Department. The new delivery process complies with Arbitrator Vining's interpretation of Article 21 of the CBA.

(Doc. # 16 at 13) (internal citation omitted).

The Union counters that the Company must "return[] to the status quo ante until such time as a parts delivery system could be agreed upon by the parties and reduced to writing. . ." (Doc. # 28 at 1).

**DISCUSSION**

The court's review of the Arbitrator's Award is very limited. *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001); *United Paperworkers Int'l Union, AFL-CIO*, 484 U.S. 29, 36 (1987). "It is impermissible for courts to usurp the functions of the arbitrator by reviewing the merits of the award or construing its meaning." *Am. Fed. of State, County and Municipal Employees, Local Lodge No. 1803 v. Walker County Med. Ctr., Inc.*, 715 F.2d 1517, 1518 (11th Cir. 1983). In reviewing the Award, the court must determine whether, as a matter of law, it must interpret the Award in order to ascertain the intent of the Arbitrator.

> We have recognized that when terminology in an arbitrator's award can be interpreted in a variety of ways the "normal course of action" is for the district court to remand the matter to the original arbitrator for clarification. *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Division*, 481 F.2d 821, 824-25 (5th Cir. 1973). The fifth circuit again recognized that remand to the arbitrator is the appropriate disposition to clarify an ambiguity in an award in the recent case of *Oil, Chemical & Atomic Workers Local 4-367 v. Rohm & Haas, Texas Inc.*, 677 F.2d 492, 495 (5th Cir. 1982).[4]

*Id*. at 1519 (footnote added).

In this case, the court concludes that the language of the award is ambiguous because while the Arbitrator upheld the grievances, nothing in her Award sets forth her remedy. Clearly the Arbitrator concluded, and the Award states, that the June 1, 2009, parts delivery policy violated the CBA. That issue is not in dispute. However, having reached that

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

conclusion, the Award is then utterly devoid of a remedy. One reading of the Award suggests that any parts delivery method not in operation on November 10, 2008 would require negotiation and written agreement between the Union and the Company.[5] On the other hand, the Company focuses on the Arbitrator's language that it is her *belief* that an agreement is *achievable,* and suggests that the Arbitrator did not require the parties to negotiate and reach a written agreement. Rather, the Company asserts the Arbitrator was stating her opinion that she was hopeful that, in the spirit of cooperation, they would an acceptable agreement. In her award, the Arbitrator merely states that the grievances are upheld. (Doc. # 21, Ex. 3 at 12). It is not at all clear what remedy the arbitrator intended, and unfortunately, she did not condense a remedy to writing.

The Union interprets that the Award to require the Company to return the parts delivery process to the status quo ante because the Arbitrator upheld the grievances. The Company asserts that the Arbitrator's Award required the parts delivery work remain within the Maintenance Department, and by returning the work to the Maintenance Department, albeit to a single employee in the department, it has complied with the Award. By the very fact that the Union and the Company can advance differing interpretations of the Award, the court concludes that the Arbitrator's opinion is ambiguous with respect to the appropriate remedy in this case. "[T]he language of the award was ambiguous because both parties

---

[5] It appears that under the old process, the mechanics in the plant were responsible for picking up and delivering parts and tools to and from the storeroom. This was the process prior to November 10, 2008 and it continued until June 1, 2009 when the new process was implemented.

offered "incongruous, yet plausible," interpretations of the arbitrator's award." *Bakery, Confectionary and Tobacco Workers Local Union Number 362-T, AFL-CIO-CLC v. Brown and Williamson Tobacco Corp.*, 971 F.2d 652, 655 (11th Cir. 1992). In *Bakery, Confectionary and Tobacco Worker's Local Union Number 362-T*, the Eleventh Circuit affirmed the district court's decision to remand the matter to the Arbitrator to resolve the ambiguity.

> We hold the district court did not err in remanding the decision for clarification of the ambiguous language in the award, *American Fed'n of State, County and Mun. Employees v. Walker County Medical Ctr.,* 715 F.2d 1517, 1519 (11th Cir. 1983). It is the duty of the arbitrator, and not the district court, to interpret the contractual language of an agreement. *Id*. at 1519 (["T]he decision for which the parties bargained and the one to which they are entitled is that of the arbitrator. Neither the notions of the district court nor of this court . . . are of relevance."). *Id*. at 1518. Because the arbitrator's authority to interpret the agreement is broad, the scope of our review is "exceedingly narrow." *Loveless v. Eastern Air Lines, Inc.*, 681 F.2d 1272, 1275 (11th Cir. 1982).

971 F.2d at 655.

Having concluded that the arbitrator's decision is ambiguous, the court concludes that the appropriate course of action is to remand to the arbitrator to clarify her award. *See e.g. Aluminum Brick and Glass Workers Intern. Union v. AAA Plumbing Pottery Corp*. 991 F.2d 1545, 1549 (11th Cir. 1993) ("If the parties cannot agree on the amount of backpay, however, the normal course of action is to treat the award as ambiguous or incomplete and remand the dispute to the original arbitrator to clarify the award."). It is the responsibility of the Arbitrator, not the court, to formulate "an appropriate remedy."

## CONCLUSION

Accordingly, for the reasons as stated, it is

ORDERED and ADJUDGED that this matter be and is hereby REMANDED to the Arbitrator to clarify her Opinion in a manner consistent with this opinion. The parties are DIRECTED to file a joint written status report on or before June 3, 2013, and every sixty (60) days thereafter, no later than the fifth day of the month, apprising the court of the status of this matter. It is further

ORDERED that the motions for summary judgment (docs. # 15 & 18) be and are hereby DENIED without prejudice.

Done this 11th day of March, 2013.

                                       /s/Charles S. Coody
                                    CHARLES S. COODY
                                    UNITED STATES MAGISTRATE JUDGE